Wesley F. Harward (#15623)
  wharward@foley.com
Alexis K. Juergens (#16861)
  ajuergens@foley.com
FOLEY & LARDNER LLP
95 South State Street, Suite 2500
Salt Lake City, Utah 84111
Telephone: (801) 401-8900

*Attorneys for Plaintiff Lash Bomb, L.L.C.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| **LASH BOMB, L.L.C.**, a Utah limited liability company,<br><br>        Plaintiff,<br><br>  v.<br><br>**BEAUTIFUL BROWS AND LASHES DISTRIBUTION, LLC**, a Utah limited liability company; **BEAUTIFUL BROWS AND LASHES, LLC**, a Utah limited liability company; **MY LASH BOMB LLC**, a Utah limited liability company; and **GLOBAL BEAUTY PRODUCTS, LTD.**, a United Kingdom company.<br><br>        Defendants. | **COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Case No. 2:23-cv-00110 |

Plaintiff Lash Bomb, L.L.C. ("Lash Bomb"), by and through its undersigned counsel,

hereby files and alleges against Defendants Beautiful Brows and Lashes Distribution, LLC

("BBLD"), Beautiful Brows and Lashes, LLC ("BBL"), My Lash Bomb LLC ("My Lash

Bomb"), and Global Beauty Products, Ltd. ("Global") (collectively "Defendants") as follows:

1

## THE PARTIES

1.      Lash Bomb is a Utah limited liability company.

2.      Upon information and belief, BBLD is a Utah limited liability company with a principal place of business at 144 West Brigham Road, Suite 16, Saint George, Utah 84790.

3.      Upon information and belief, BBL is a Utah limited liability company with a principal place of business at 144 West Brigham Road, Suite 16, Saint George, Utah 84790.

4.      Upon information and belief, My Lash Bomb is a Utah limited liability company with a principal place of business as 363 North University Avenue, Suite 114, Provo, Utah 84601.

5.      Upon information and belief, Global is a United Kingdom company with a principal place of business at 22A the Matchworks, Liverpool, L19 2RF. Upon information and belief, Global does business in Utah including business with BBLD, BBL, and My Lash Bomb.

## NATURE OF THE CLAIMS

6.      This is an action for trademark infringement, unfair competition, and false designation of origin, arising under Section 43 of the Trademark Act of 1946 ("Lanham Act"), as amended, 15 U.S.C. § 1051 *et seq.*; violations of Utah Code § 13-11a-101 *et seq.*; and trademark infringement under common law.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. § 1338 in that this case arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.*

2

8.      This Court has subject matter jurisdiction over the unfair competition claims herein under the provisions of 28 U.S.C. § 1338(b) in that those claims are joined with substantial and related claims under the Lanham Act, 15 U.S.C. § 1051 *et seq.*

9.      This Court has supplemental jurisdiction over the claims that arise under Utah law, pursuant to 28 U.S.C. §1367(a) because they are substantially related to the claims that arise under the Lanham Act. Furthermore, this Court has supplemental jurisdiction because both the state and federal claims are derived from a common nucleus of operative facts and considerations of judicial economy dictate the state and federal issues be consolidated for a single trial.

10.     This Court has general personal jurisdiction over BBLD, BBL, and My Lash Bombs as a Utah limited liability companies.

11.     This Court also has specific personal jurisdiction over Global based on its purposeful direction of its promotional advertising activities and sales of its goods and services to residents and customers in Utah, through BBLD, BBL, and My Lash Bomb. This Court also has specific personal jurisdiction over Global based on Global's interactions with Lash Bomb and Global's knowledge that its conduct infringed Lash Bomb's trademarks and caused harm to Lash Bomb, a Utah company.

12.     Venue is proper in this judicial district pursuant to, at least 28 U.S.C. § 1391 because, upon information and belief, Defendants regularly do business in Utah, and have promoted and sold products within this district that constitutes unfair competition, false advertising, and a violation of Lash Bomb's intellectual property rights.

## NATURE OF THE CLAIMS

### The Creation of Lash Bomb's Successful Business

13.      Lash Bomb was founded by Jill Kindall when she discovered her passion for helping others feel beautiful and confident in themselves. Ms. Kindall went back to school to become a Master Medical Esthetician, and as she was attending school, she realized that she had a knack for providing beautiful eyelash extensions. However, as she expanded her knowledge in the eyelash extension world, she soon discovered that the products on the market at that time were not optimal.

14.      In an effort to make eyelash extensions easier, safer, more cost effective, and healthier for each and every client, Ms. Kindall invented the original eyelash extension product she called Lash Bomb. She also formed the eponymous company.

15.      Ms. Kindall developed Lash Bomb as an eyelash extension supply company and continuously perfected her talents as an eyelash extension specialist. As she expanded her expertise, she began to sell her innovative products and train others in her method.

16.      As Ms. Kindall sharpened her talents, Lash Bomb continued to grow. Lash Bomb now features its eyelash supply line at tradeshows, online, on mobile apps, and through beauty school networks all around the United States.

### Lash Bomb's Distinctive Trademarks

17.      In order to protect the business and products that Ms. Kindall built from the ground up, Lash Bomb federally registered three trademarks for the mark "LASHBOMB." (hereinafter "LASHBOMB Trademarks"). The LASHBOMB Trademark has been registered to

4

protect Lash Bomb's artificial eyelashes, eyelash extensions and preparation materials, and eyebrow and brow lamination kits, among other goods.

18.     Lash Bomb is the owner of the valid trademark "LASHBOMB." Attached as Exhibits 1–3 are true and correct copy of the registration certificate for Registration Numbers 4,685,232, 5,034,487, and 6,812,601.

19.     Lash Bomb has used its LASHBOMB Trademark continuously since February 1, 2013.

20.     As a result of Lash Bomb's widespread, continuous, and exclusive use of the LASHBOMB Trademark to identify its various eyelash cosmetic goods, Lash Bomb owns a valid and subsisting federal statutory and common law rights in the LASHBOMB Trademark.

21.     The LASHBOMB Trademark is distinctive to the consuming public.

22.     Lash Bomb has expended a substantial amount of time, money, and resources, marketing, advertising and promoting its various eyelash cosmetics utilizing the LASHBOMB Trademark, including through, at least, its website at https://lashbomb.com/ and various social media platforms.

23.     As a result of Lash Bomb's efforts, the LASHBOMB Trademark signifies to consumers that the cosmetic products designated by the LASHBOMB Trademark are of high quality and come from a specific source—Lash Bomb. As such, the LASHBOMB Trademark has acquired distinction, reputation, and goodwill that belongs to Lash Bomb.

24.     Over the years, Lash Bomb has developed and currently offers for sale a variety of different eyelash cosmetics that it has worked tirelessly to perfect. Lash Bomb is known for its

high-quality products.  And consumers associate the high-quality products offered by Lash

Bomb with the LASHBOMB Trademark.

25.    Lash Bomb also offers products, trainings, and education materials to beginners

and professionals alike.  Lash Bomb partners with beauty schools to train students on Lash Bomb

products.

**Defendants' Pattern of Purposefully Utilizing Product Names that are Identical to or Confusingly Similar to the LASHBOMB Trademark**

26.    Upon information and belief, Defendants BBLD, BBL, and My Lash Bomb are

owned (directly or indirectly) by, share common ownership with, or are otherwise affiliated with

Global.

27.    In an attempt to trade off of Lash Bomb's goodwill and good name, Defendants

currently market and sell a variety of lash lift kits and lash lift kits infringing the LASHBOMB

Trademark.

28.    Specifically, Defendants have adopted identical or nearly identical names for their

lash lift kits and accessories (all of which bear similar packaging and designs).

29.    For example, Defendants sell the following lash lift packs called "LASH BOMB"

as well as so-called "LASH BOMB Manuals" educating people how to utilize Defendants' lash

lifting kits:

6



https://beautyendevr.com/collections/bomb-duo/products/lash-brow-trial-pack



https://beautyendevr.com/collections/trainings-and-certifications/products/bomb-duo-online-lash-lift-course

7



https://beautifulbrowsandlashes.us/collections/lash-lift-starter-kits



https://lashliftstore.com/products/bomb-duo-lash-lift-trial-pack?_pos=1&_sid=280e412e1&_ss=r

8

30.    Defendants also maintain various social media accounts unlawfully utilizing the LASHBOMB Trademark. For example, on information and belief, Defendants run the Twitter account @MyLashBomb, offering and selling to customers a "Lash Bomb Sample Pack.":



https://mobile.twitter.com/mylashbomb

31.    In addition to this unlawful use, Global has the following line of products it calls "Lash Bomb":



https://beautifulbrowsandlashes.com/collections/lash-bomb

32.     Defendants also offer products called "Lash & Brow Bomb" that are confusingly similar to the LASHBOMB Trademark.

33.     For example, although the term "Brow" is inserted in between "Lash" and "Bomb," Defendants still ensure to bold both the term "Lash" and "Bomb" on its packaging to emphasize "LASH BOMB" as follows:



https://beautifulbrowsandlashes.us/collections/bomb-duo-lash-lifting/products/lash-lift-step-1-2-3

10

**Defendants' Trademark Infringement is Causing Confusion in the Marketplace**

34.    Without Lash Bomb's authorization, Defendants continue to use the product names "Lash Bomb," and "Lash & Brow Bomb" for their various eyelash cosmetics.

35.    "Lash Bomb" is the *exact* same as the LASHBOMB trademark, except for the space between the words "lash" and "bomb." Defendants' use of "Lash Bomb" has caused significant confusion in the marketplace concerning the source of Defendants' product.

36.    Similarly, "Lash & Brow Bomb" is confusingly similar to the LASHBOMB trademark. Defendants' use of "Lash & Brow Bomb" has also caused significant confusion in the marketplace concerning the source of Defendants product.

37.    Since Defendants' use of "Lash Bomb" and "Lash & Brown Bomb" in connection with its eyelash cosmetics, there has been significant confusion among customers as to Lash Bomb and Defendants. By way of example, and without limitation:

a.    Consumers have purchased Defendants' products and then tagged Lash Bomb in the social media posts featuring Defendants' products.

b.    Customers have called Lash Bomb to complain about Defendants' products, believing that the product they are complaining about is a Lash Bomb product.

c.    Professional estheticians receiving training from Defendants regarding use of Defendants' products have reached out to Lash Bomb, thinking they had received training from Lash Bomb on Lash Bomb's products.

d.    Beauty school owners and operators have contacted Lash Bomb thinking they had received training from Lash Bomb when, in reality, they had received training or materials from Defendants.

38.    Through this marketplace confusion, customers' dissatisfaction with Defendants' products has become apparent. Lash Bomb has received calls from Defendants' customers

4886-5100-7311.3

complaining about their eyes burning or the quality of the product, when really those customers

had purchased Defendants' product and not Lash Bomb's.

39.     Lash Bomb has worked hard to create unique, high quality eyelash products, but

Defendants' ongoing unlawful activities is now leading to Lash Bomb's products being falsely

associated with Defendants' inferior products.

**Defendants' Unfair Business Practices and False Advertising**

40.     In addition to Defendants' blatant infringement of the LASHBOMB Trademark,

Defendants have also engaged in a pattern of unfair business practices designed to trick

consumers into believing that Defendants' products are Lash Bomb's.

41.     Due to the nature of online shopping, businesses often utilize Google Ads to

promote their business. Google Ads allows an advertiser to bid for certain keywords so its

business appears in search results when consumers search those keywords.

42.     Google Ads appear at the top of the search results page after running a Google

Search. The most prominent information displayed in a Google Ad is the headline in the largest

font.

43.     Beneath the headline are descriptions and "snippets" of information typically

containing product or business information relevant to the search. This information is in much

smaller font.

44.     A Google Ad also displays the URL of the link, but this information is the least

conspicuous and in the smallest font.

45.     On information and belief, Defendants intentionally utilize the LASHBOMB

Trademark in its Google Ad headlines as a way to intentionally mislead and confuse customers.

46.     For example, if an individual searches Google using the word "lash bomb," the first Google Ad to appear is one for Defendants, with the large heading of "Home of The Lash Bomb":



47.     Another example of Defendants' misleading headings in its Google Ads is it marketing itself as being the "Official Lash Bomb":



48.     These statements regarding Defendants' being the "Home of the Lash Bomb" and the "Official Lash Bomb" are literally false because it is Lash Bomb is the "Home of the Lash Bomb" and the "Official Lash Bomb."

49.     On information and belief, Defendants purposefully use the LASHBOMB Trademark in marketing, claiming they are the "home of" or the "official" Lash Bomb in attempt to mislead Lash Bomb's customers into purchasing Defendants' product.

13

50.    On information and belief, Defendants' price their products similarly to Lash Bomb's products, which further promotes confusion amongst consumers.

51.    The similarity of categories of products, similarity of target customers, blatant use of the LASHBOMB Trademark, and the misleading advertising of "Home of the Lash Bomb" result in confusion among customers.

52.    Defendants' use of the LASHBOMB Trademark misleads and confuses customers as to the affiliation, connection, association, origin, sponsorship, or approval of Defendants' eyelash cosmetic products and related materials.

53.    There can be no doubt that Defendants' conduct is willful.  Lash Bomb has repeatedly written to Global and other Defendants demanding they cease and desist their unlawful conduct.

54.    In response, Defendants merely doubled down and continued their trademark infringement and attempts to mislead customers.

## FIRST CLAIM FOR RELIEF

*(Trademark Infringement 15 U.S.C. § 1114)*

55.    Lash Bomb realleges and incorporates the foregoing paragraphs as though fully set forth herein.

56.    Lash Bomb has a valid and protectable trademark of "LASHBOMB."

57.    Defendants' unauthorized use in commerce of "Lash Bomb" and "Lash & Brow Bomb" as alleged herein is likely to confuse, or cause mistake or deceit among consumers.

58.    Defendants' conduct is has caused and will continue to cause immediate and irreparable harm and injury to Lash Bomb, its goodwill, and its reputation.

14

59.     Defendants' conduct will continue to both damage Lash Bomb and confuse the public unless enjoined by this Court. Lash Bomb has no adequate remedy at law.

60.     Defendants' acts of infringement have caused Lash Bomb damages and Lash Bomb is entitled to judgment pursuant to 15 U.S.C. § 1117, together with prejudgment and post-judgment interest.

61.     Lash Bomb is entitled to an award of punitive and/or treble damages for at least three time the amount of Defendants' profits or Lash Bomb's damages, whichever is greater, due to the nature of Defendants' wanton and willful conduct.

62.     Pursuant to 15 U.S.C. § 1116, Lash Bomb is entitled to permanent injunctive relief against Defendants to stop the illegal infringing conduct.

63.     Pursuant to 15 U.S.C. § 1118, Lash Bomb is entitled to impoundment and destruction of infringing articles.

## SECOND CLAIM FOR RELIEF

*(Unfair Competition/False Designation of Origin 15 U.S.C. § 1125)*

64.     Lash bomb realleges and incorporates the foregoing paragraphs as though fully set forth herein.

65.     Defendants utilize and/or have utilized the phrase "Home of the Lash Bomb" and the "Official Lash Bomb" in conjunction with their online advertising in an attempt to mislead and confuse customers as to the affiliation, connection, association, origin, sponsorship, or approval of Defendants' products.

66.     Defendants' use of the names "Lash Bomb" and "Lash & Brow Bomb" is confusingly similar to "LASHBOMB."

15

67.     Defendants' unauthorized use in commerce of "Lash Bomb" and "Lash & Brow Bomb" as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' lash lift kits and accessories.  It is also likely to cause consumers to believe, contrary to fact, that Defendants' lash lift kits and accessories are sold, authorized, endorsed, or sponsored by Lash bomb, or that Defendants are in some way affiliated with or sponsored by Lash Bomb.

68.     Defendants' conduct therefore constitutes unfair competition.

69.     Defendants' unauthorized use in commerce of "Lash Bomb" and "Lash & Brow Bomb" as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

70.     Upon information and belief, Defendants' conduct as alleged herein is willful and intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Lash Bomb.

71.     Defendants' conduct is causing immediate and irreparable harm and injury to Lash Bomb, and to its goodwill and reputation, and will continue to both damage Lash Bomb and confuse the public unless enjoined by this Court. Lash Bomb has no adequate remedy at law.

72.     Lash Bomb has suffered damages as a result of Defendants' unlawful actions.

73.     Lash Bomb is entitled to damages pursuant to 15 U.S.C. § 1117.

### THIRD CLAIM FOR RELIEF

*(False Advertising 15 U.S.C. § 1125)*

74.     Lash Bomb realleges and incorporates the foregoing paragraphs as though fully set forth herein.

16

75.     As described above, Defendants' advertising their products and companies as being the "Home of the Lash Bomb" and the "Official Lash Bomb" is literally false and/or is a misleading description or representation of fact which misrepresent the nature, characteristics and qualities of Defendants' products.

76.     These statements are likely to mislead and confuse consumers and as such constitutes false advertising under 15 U.S.C. § 1125(a).

77.     Defendants' conduct is causing immediate and irreparable harm and injury to Lash Bomb, and to its goodwill and reputation, and will continue to both damage Lash Bomb and confuse the public unless enjoined by this Court. Lash Bomb has no adequate remedy at law.

78.     Lash Bomb has suffered damages as a result of Defendants' unlawful actions.

79.     Lash Bomb is entitled to damages pursuant to 15 U.S.C. § 1117.

<u>**FOURTH CLAIM FOR RELIEF**</u>

*(Violations of Utah Code § 13-11a-1 et seq.)*

80.     Lash Bomb realleges and incorporates the foregoing paragraphs as though fully set forth herein.

81.     As described above, Defendants' conduct is causing and is likely to cause confusion or misunderstanding as to the source, sponsorship, affiliation, connection to or association with Lash Bomb in violation of Utah Code § 13-11a-1 et seq.

82.     By their conduct, Defendants have caused Lash Bomb irreparable harm, damage, and injury to the value a goodwill built by Lash Bomb in its LASHBOMB Trademark, as well as to Lash Bomb's business, goodwill, and reputation.

17

83.    Lash Bomb is entitled to injunctive relief and damages as a result of Defendants' unlawful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Lash Bomb prays:

A.  The Court enter a judgment in favor of Lash Bomb and against Defendants as to all causes of action alleged herein.

B.  That this Court issue permanent injunctions pursuant to 15 U.S.C. § 1116, Utah law, and equity, enjoining and restraining Defendants and their affiliates, agents, partners, servants, and employees, or anyone acting with its authority or on their behalf, from directly or indirectly using any mark, word, designation, name, or domain name similar to Plaintiff's LASHBOMB Trademark that is likely to cause confusion or mistake or to deceive;

C.  That, within five (5) days of issuance of a permanent injunction, the Court order Defendants to file a sworn statement under oath and subject to penalty of perjury that they have fully complied with the terms of the injunction;

D.  That this Court, pursuant to 15 U.S.C. § 1118 and other law and equity, order that all labels, signs, prints, packages, wrappers, receptacles, pictures, websites and advertisements in the possession or under the control of Defendants bearing any mark, word, designation, name, or domain name that is confusingly similar to the LASHBOMB Trademark and all plates, molds, matrices, and other means of making the same, shall be delivered to Plaintiff and/or destroyed;

18

E.  That Defendants be required to account to Plaintiff for any and all benefits or profits derived by Defendant from the use of any name or mark incorporating any mark, word, designations, name, or domain name that is confusingly similar to the LASHBOMB Trademark, including the sale of any and all products or services associated with any such name or mark, and for all damages sustained by Plaintiff by reasons of said acts of unfair competition, false designation of origin, and/or other illegal acts complained of herein to the full extent permitted by 15 U.S.C. §§ 1117 and 1125; Utah Code § 13-11a-101 *et seq.*; and Utah Common law;

F.  That Plaintiff be awarded statutory damages under 15 U.S.C. § 1117(c), should Plaintiff so elect;

G.  That this Court award Plaintiff punitive and/or treble damages in an amount no less than three times the amount of Defendants' profits or Plaintiff's damages, whichever is greater, due to the wanton, egregious, willful, deliberate, intentional, and/or malicious nature of its actions;

H.  That the costs of this action be awarded to Plaintiff;

I.  That Plaintiff be awarded its reasonable attorney fees due to the exceptional nature of this case and Defendants' intentional, wanton and willful illegal conduct;

J.  That Defendants be liable for any award of monetary damages, statutory damages, treble damages, punitive damages, costs, and/or attorney fees;

K.  That pre-judgment and post-judgment interest be awarded to Plaintiff; and

L.  That this Court grant such other and further relief as it shall deem just.

4886-5100-7311.3

**<u>JURY DEMAND</u>**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: February 13, 2023.

FOLEY & LARDNER LLP

*/s/ Wesley F. Harward*
Wesley F. Harward
Alexis K. Juergens

*Attorneys for Plaintiff Lash Bomb, L.L.C.*